IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

INTERCARRIER COMMUNICATIONS, LLC,
        Plaintiff,

v.                                    Civil Action No. 3:12-CV-767-JAG

GLYMPSE, INC.,
        Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's motion to transfer venue. (Dk. No. 19.) The plaintiff, Intercarrier Communications, LLC ("ICC"), has sued the defendant, Glympse, Inc. ("Glympse"), for patent infringement.

Glympse has moved the Court to transfer the case to the Western District of Washington ("WDWA"). The parties agree that ICC could have brought this case in the WDWA. Thus, the Court need only balance the convenience and justice of the transfer. The Court finds that the balance tips in favor of transfer because of the convenience of Washington for both parties and witnesses, and because of ICC's attenuated connection to the Eastern District of Virginia ("EDVA"). Accordingly, the Court GRANTS Glympse's motion to transfer venue and TRANSFERS the case to the Western District of Washington.

## I. BACKGROUND

ICC owns U.S. Patent No. 6,985,748 Patent ("the '748 Patent") entitled "Inter-carrier Messaging Service Providing Phone Number Only Experience." (Compl. ¶ 9.) The record in this case shows that ICC is a Texas limited liability company, with its principal place of business in

Frisco, Texas. Glympse is a Washington corporation, with its principal place of business in Seattle.

None of the relevant witnesses in this case reside in EDVA. On ICC's side, Chris Knotts, the inventor, lives in Maryland. (Dk. No. 1-1, Ex. A, at 2.) The attorney who prosecuted the patent, William Bollman, practices law in Washington, D.C. TeleCommunication Systems, Inc. ("TCS"), the original assignee of the patent, maintains its principal place of business in Annapolis, Maryland. TCS has no connection with Virginia other than having filed a patent enforcement suit here in 2006.

On Glympse's side, the relevant witnesses all live in Washington State. Glympse has only seventeen employees all located in one office in Seattle, Washington. It maintains all documents in Washington. The most knowledgeable persons regarding the development, functionality, and sales of the Glympse application, Steve Miller (Chief Architect), Craig Link (Server Lead), and Bryan Trussel (CEO and co-founder) reside in Washington. Glympse has never had any offices, employees, sales representatives, or servers in Virginia. (Dk. No. 20-1, Trussel Decl. ¶¶ 2–5.)

ICC has filed in EDVA complaints against thirteen different defendants for infringement of the '748 Patent.[1] Beyond litigating in Virginia, ICC appears to have no other contact with the state.

## II. STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . .

---

[1] As of the date of entry of this opinion, six of the thirteen original cases have been dismissed, two defendants have had default entered against them, and one has been transferred to the Southern District of Florida. The remaining four cases, including this case, are still pending in this Court.

. . ." 28 U.S.C. § 1404(a). In deciding whether to transfer venue, "a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). "As part of the second inquiry the court must also consider the plaintiff's choice of venue." *Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 325 (E.D. Va. 2004). "The party seeking transfer bears the burden of proving that the circumstances of the case are *strongly* in favor of transfer." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (internal citation & quotation marks omitted) (emphasis in original). Nonetheless, "the ultimate decision [on whether to transfer a case] is committed to the sound discretion of the district court." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994 (E.D. Va. 2011) (citing *Agilent*, 316 F. Supp. 2d at 325).

### III. DISCUSSION

*A. Jurisdiction of the Transferee Forum*

The Court must first determine whether ICC could have brought its claim in the transferee forum. For patent infringement cases, the action "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Corporate defendants reside in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2); *see also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990) (holding that the language of § 1391(c) applies to § 1400(b)).

Glympse is a Washington corporation with its principal place of business in Seattle, within the WDWA. Under § 1391(c)(2), Glympse resides in the WDWA, and ICC could have brought this action there.

### B. The Interest of Justice and Convenience of the Parties

The second step of the § 1404(a) venue transfer analysis requires the Court to balance three factors: (1) the plaintiff's choice of forum; (2) convenience of the parties and witnesses; and (3) the interest of justice. *See Pragmatus*, 769 F. Supp. 2d at 994–95 (quoting *Heinz Kettler*, 750 F. Supp. 2d at 667). The Court addresses each factor in turn.

#### 1. ICC's Choice of Venue

"The initial choice of forum, from among those possible under the law, is a privilege given to the plaintiff." *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (quoting *Koh*, 250 F. Supp. 2d at 633). The plaintiff's choice of forum "is typically entitled to 'substantial weight,' especially where the chosen forum is the plaintiff's home forum or bears a substantial relation to the cause of action." *Heinz Kettler*, 750 F. Supp. 2d at 667. But "[t]he level of deference to a plaintiff's forum choice 'varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action.'" *Pragmatus*, 769 F. Supp. 2d at 995 (quoting *Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988)).

The EDVA is not ICC's home forum, nor is there a substantial relationship between ICC's infringement action and the EDVA. The reasons presented by ICC to illustrate ICC's connection with the EDVA include the facts that the previous assignee of the '748 Patent, TCS, does business in Maryland, the inventor resides in Maryland, and the '748 Patent's prosecuting attorney works in Washington, D.C. (Dk. No. 21, Pl.'s Mem. Opp'n 9.) While these facts

represent ICC's potential connection with Maryland or Washington, D.C., they do not present any connection with Virginia. The additional fact that a *different plaintiff* and a *different defendant* litigated a case on the '748 Patent in the Eastern District of Virginia, *Telecommunication Systems, Inc. v. Mobile 365, Inc.*, No. 3:06-CV-485 (E.D. Va.), does not create a connection between *ICC* and the EDVA.

ICC also argues that "given the enormous number of Glympse Messenger users . . . Defendant cannot credibly deny that a significant number of its users are located in Virginia . . . . Thus, the cause of action is closely tied to [the EDVA]." (Dk. No. 21, Pl.'s Mem. Opp'n 9–10.) In making this argument, ICC attempts to establish a "nexus between [the EDVA] and the instant infringement action." *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, No. 2:12CV548, 2013 WL 831710, at *4 (E.D. Va. Mar. 6, 2013). ICC, however, overlooks case law establishing that "[f]ederal courts are not solicitous of plaintiffs claiming 'substantial weight' for their forum choice where the connection with the forum is limited to sales activity without more." *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938 (E.D. Va. 2001); *see also Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) ("It is well-settled that the mere existence of limited sales activity within Virginia does not require this court to give the plaintiff's choice of forum substantial weight when balancing the convenience and justice factors.").

Although some Virginia residents presumably use the popular Glympse application, nothing demonstrates that Virginia residents use this software proportionately more than residents of any other state. Thus, the Court need not take Glympse's sales activity and popularity in Virginia into account. Additionally, similar to the infringement action in *Bluestone Innovations LLC v. LG Elecs., Inc.*, ICC "neither researched nor developed the technologies covered by the Patent" and "does not manufacture or sell any products based on the Patent in

5

[the EDVA]." Nos. 2:12cv503, 2:12cv510, 2:12cv532, 2:12cv545, 2013 WL 1655660, at *5 (E.D. Va. Apr. 12, 2013). Accordingly, because the EDVA is not ICC's home forum and there is not a connection between the EDVA and the instant infringement action, the Court will not give ICC's choice of forum substantial weight.

### 2. Convenience of the Parties and Witnesses

When a plaintiff's choice of forum is afforded little weight, "a great weight tipping the scales against transfer has been removed." *Id.* at *5 n.9. Accordingly, the factor considering the convenience of the parties and witnesses takes on added importance. *Id.* at *5. In considering the convenience of the parties and witnesses, "this court considers factors such as the 'ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process.'" *Lycos*, 499 F. Supp. 2d at 693 (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005)). When considering witnesses:

> [The EDVA] draws a distinction between party-witnesses and non-party witnesses and affords greater weight to the convenience of non-party witnesses. The party asserting witness inconvenience must proffer sufficient details regarding the witness and his or her testimony to allow the court to assess both the materiality of the evidence that the witness will offer and the inconvenience that will result from declining to transfer the action.

*Id.* (quoting *Samsung*, 386 F. Supp. 2d at 718).

### a. Ease of Access to Sources of Proof and Convenience to Witnesses

Looking first to the ease of access to sources of proof, ICC argues that the Court should give this factor little weight "in this age of electronic discovery where parties no longer need to produce hard copies of documents." (Dk. No. 21, Pl.'s Mem. Opp'n 11.) In support of this argument, ICC cites *Newman v. Advanced Technology Innovation Corp.*, an unpublished EDVA opinion dealing with an alleged violation of the Fair Labor Standards Act. No. 1:12cv24, 2012

WL 1414859 (E.D. Va. Apr. 20, 2012). For patent infringement cases, the Federal Circuit has said that "the bulk of relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 504–05 (E.D. Va. 2012) (quoting *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Even the *Newman* Court recognized that "[a]lthough entitled to little weight, this factor nevertheless favors transfer more than it disfavors it. 2012 WL 1414859, at *3.

Neither party has proffered evidence regarding the nature, hard-copy or electronic, of the relevant documents, so the Court cannot assume that all pertinent documents exist in easily transferrable forms. According to Glympse's Chief Executive Officer,

> All Glympse documents, whether electronic or hard copy, are maintained in the State of Washington. Documents related to the development, functionality, marketing and distribution of the accused Glympse app, as well as any documents relating to revenues and profits (if any), from its distribution, are located in the State of Washington.

(Dk. No. 20-1, Trussel Decl. ¶ 5.) The parties' access to sources of proof weighs in favor of transfer to the WDWA.

Given that all of Glympse's witnesses live in Washington State, it is obvious that WDVA is a more convenient forum to them. By the same token, Virginia is a more convenient forum for the witnesses who might testify for ICC. But, as discussed below, two of ICC's three potential witnesses will likely have little relevant evidence to offer.

The factor of accessibility of witnesses and evidence and convenience to witnesses weighs in favor of transfer.

7

*b. Cost of Obtaining the Attendance of Witnesses and the Availability of Compulsory Process*

Turning next to the cost of obtaining the attendance of witnesses and the availability of compulsory process, each party seems to have three witnesses. ICC discusses three non-party witnesses: the '748 Patent inventor Knotts; original patent assignee TCS; and the '748 Patent prosecuting attorney Bollman. Although not explicitly described as potential party-witnesses, Glympse names three people who have the most knowledge about the development, functionality, and sales of Glympse: Chief Architect Miller; Server Lead Link; and Co-Founder and Chief Executive Officer Trussel.

Obviously, all of ICC's witnesses reside on the East Coast near the EDVA, while all of Glympse's witnesses reside on the West Coast near the WDWA. Thus, attendance of these witnesses would cost relatively the same for this motion's losing party.

Neither party provides details on the materiality of each witness. Without help from the parties, the Court can understand the materiality of all three Glympse witnesses based on their jobs at Glympse and their roles in the development of Glympse's product. Similarly, ICC's witness Knotts, the inventor, could be a material witness. The Court struggles, however, to understand the materiality of TCS and Bollman as witnesses. The central issue in the case is the similarity of Glympse's product to the protected invention. The patent prosecutor and first assignee of the patent can offer no evidence respecting these issues.

In patent infringement cases, this Court has allowed transfer even when the patent's inventor and prosecuting attorney resided in the EDVA because "the overwhelming majority of the sources of proof in [the] case, both documentary and testimonial, are in the Northern District of California." *Adiscov, L.L.C. v. Autonomy Corp., PLC*, No. 2:11-CV-00201, Dk. No. 68, at 9 (E.D. Va. June 9, 2011); *see also Bascom Research LLC v. Facebook, Inc.*, No. 1:12-CV-01111,

8

Dk. No. 40, at 4 (E.D. Va. Dec. 11, 2012) (granting defendant's motion to transfer where the defendant identified "numerous potential witnesses and sources of evidence" in the Northern District of California, even though the plaintiff identified a patent co-inventor located in Maryland and the patent's prosecuting attorneys located in Washington, D.C.); *Bluestone Innovations*, 2013 WL 1655660, at *7 (granting motion to transfer even though the attorney who prosecuted the patent resided in the EDVA). Further, the Court recognizes that "[b]ecause patent infringement actions typically involve the testimony of those associated with the development and production of the allegedly infringing product, the preferred forum in patent infringement actions is the hub of activity centered around the infringing product's production." *Hunter Eng'g Co. v. ACCU Indus., Inc.*, 245 F. Supp. 2d 761, 775 (E.D. Va. 2002) (internal citations & quotation marks omitted); *see Koh*, 250 F. Supp. 2d at 636–37 ("[I]t is permissible to infer, absent any contrary evidence from the non-movant, that witnesses . . . involved in the design and manufacture of the accused products are material.").

      The availability of compulsory process does not sway the balancing test because only one potential non-party witness, patent prosecuting attorney Bollman, could possibly be subject to compulsory process by this Court because his office is approximately 100 miles from this Court's Richmond Courthouse. ICC attaches a screenshot from Bollman's firm's website listing the firm's address in Washington, D.C. (Dk. No. 21-17, Yu Decl. Ex. O.) Glympse responds to this by noting that "Google Maps . . . shows that the shortest suggested route by car between this Court's Richmond Courthouse and Bollman's firm's offices is 108 miles." (Dk. No. 22, Def.'s Reply 6.) The Court does not wish to delve into mileage differences, especially seeing as ICC has not provided details regarding the materiality of Bollman's testimony in this case.

The Court finds that the cost of obtaining the attendance of witnesses and the availability of compulsory process weighs in favor of transfer to Washington State.

### 3. Interest of Justice

In evaluating the interest of justice, relevant considerations include "the pendency of a related action, the court's familiarity with applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment." *Pragmatus*, 769 F. Supp. 2d at 996. The parties only argue the applicability of two of these relevant considerations, the pendency of related action and docket conditions. The Court agrees that the other factors do not apply to this action.

Looking first at the pendency of related action, ICC argues that "transferring will sever into two groups the thirteen cases . . . [and] would require ICC to litigate in two places." (Dk. No. 21, Def.'s Reply 14.) Glympse rightly points out, however, that ICC agreed to transfer one of the other cases to the Southern District of Florida on April 18, 2013, *Intercarrier Communications LLC v. Interop Technologies, LLC*, No. 3:12-CV-00769, Dk. No. 25 (E.D. Va. Apr. 18, 2013), before filing its opposition to Glympse's motion on May 2, 2013. Thus, ICC's argument that transferring Glympse's case would be inconvenient does not deserve consideration because ICC already voluntarily agreed to "sever into two groups the thirteen cases."[2] (Dk. No. 21, Def.'s Reply 14.) Accordingly, the pendency of related actions in the EDVA does not weigh against transfer of Glympse's case to the WDWA.

---

[2] Should the multi-state litigation prove cumbersome, the Judicial Panel on Multidistrict Litigation ensures judicial efficiency in such cases by transferring multiple lawsuits involving common issues to one district for "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a); *see, e.g.*, *In re Acacia Media Techs. Corp. Patent Litig.*, 360 F. Supp. 2d 1377 (J.P.M.L. 2005 (coordinated and consolidated multiple patent infringement actions for pretrial proceedings).

ICC also contends that "a transfer would undoubtedly result in significant delay" because "the [EDVA] is well-known for the speed of its docket." (Dk. No. 21, Pl.'s Mem. Opp'n 13.) As noted by the EDVA many times over, "[t]his Court cannot stand as a willing repository for cases which have no real nexus to this district." *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000). "The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner." *Id.* In other words, this Court should not allow itself to be overrun by a horde of Visigoths who simply want quick results.

Accordingly, the interest of justice does not weigh in favor of keeping this case in the EDVA.

## IV. CONCLUSION

Taken as a whole, the factors governing venue tilt in favor of transfer to Washington. For the reasons set forth above, the Court GRANTS the defendant's motions to transfer venue to the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: August 12, 2013
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge

11